IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

**FILED
SCRANTON**

MAR 30 2012

PER _____
**DEPUTY CLERK**

JOHN SMEDLEY, JR.,        :
          Plaintiff      :
                         :
     v.                  :        CIVIL NO. 3:CV-10-2266
                         :
                         :        (Judge Conaboy)
JEFFREY A. BEARD, ET AL.,  :
          Defendants     :

_____

**MEMORANDUM**
**Background**

This civil rights action pursuant to 42 U.S.C. § 1983 was

filed by John Smedley, Jr., an inmate presently confined at the

Mahanoy State Correctional Institution, Frackville, Pennsylvania

("SCI-Mahanoy").   On April 5, 2011, counsel for the Plaintiff filed

an Amended Complaint (Doc. 8).   After being granted an enlargement

of time, Defendants filed a motion (Doc. 11) to dismiss the Amended

Complaint.   The Defendants' motion has been briefed and is ripe for

consideration.

Named as Defendants are Secretary Jeffrey Beard of the

Pennsylvania Department of Corrections ("DOC"); SCI-Mahanoy

Superintendent John Kerestes and the following Board Members of the

Pennsylvania Board of Probation and Parole ("Parole Board"):

Catherine C. McVey, Benjamin Martinez, Allen Castor, Jeffrey R.

Imboden, Matthew T. Mangino, Michael L. Green, Gerard N. Massaro,

Charles Fox, Judy Viglione, Gary R. Lucht, Sean R. Ryan, Michael M.

Webster, Lloyd White, Nicholas P. Muller and Barbara Descher.

Plaintiff's Amended Complaint, which seeks declaratory and injunctive relief, states that Defendants "have continuously, systematically and deliberately denied or participated in official acts contributing to the denial of parole to Plaintiff based upon his refusal to participate in a Sex Offender Treatment Program (the "Treatment Program") designed by the DOC."[1]   Doc. 8, ¶ 1.

It is alleged that as a consequence of his refusal to admit guilt or take responsibility for the sex offenses which he was convicted of in Pennsylvania state court, Plaintiff has been denied "access" to the Treatment Program by DOC Defendants Beard and Kerestes.[2]   It is further asserted that completion of the Treatment Program "is a prerequisite to parole" and that entry into the program requires Smedley to either admit guilt or take responsibility for the his crimes.   Id.   After being permitted into the program, Plaintiff is also required to disclose past sexual conduct and again admit his guilt.   See id.

---

[1]   The United States Supreme Court in Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005), announced that prisoners may challenge the constitutionality of state parole proceedings in § 1983 actions seeking declaratory and injunctive relief.   However, the Court indicated that such actions could only be employed in cases where success of the procedural challenges would not necessarily require immediate or speedier release for the prisoner.

[2]   There appears to be some discrepancy as to whether Smedley refused to participate in the Treatment Program due to the admission of guilt requirement or applied but was denied admission into the program for that same reason.

Plaintiff asserts that the requirement that he admit his guilt or take responsibility in order to gain admittance into the Treatment Program violates the Fourteenth Amendment in that the requirement is discriminatory and is not reasonably related to any correctional or rehabilitative goal.  Smedley contends that although the stated purpose of the Treatment Program is to reduce recidivism, statistical studies which have been accepted by the DOC "find that there is no significant statistical correlation between a convicted sex offender's admission of guilt to the sex crimes of which he was convicted and recidivism rates among that class of offenders."  Id. at ¶ 2.

The Amended Complaint concludes that the actions taken by both the DOC and Parole Defendants violated Smedley's due process and equal protection rights under the Fourteenth Amendment and also constituted a violation of the Ex Post Facto Clause.

**Procedural History**

On October 10, 1996, Plaintiff was convicted of involuntary deviate sexual intercourse, indecent assault, indecent exposure, and corruption of minors.  Smedley was sentenced to serve an aggregate five (5) to twenty (20) year term of imprisonment on December 10, 1996.

61 Pa. Stat. § 331.1 was the Pennsylvania law which governed parole at the time of Smedley's conviction, it read as follows:

> The value of parole as a disciplinary and
> corrective influence and process is hereby
> recognized, and it is declared to be the public
> policy of this Commonwealth that persons
> subject or sentenced to imprisonment for crime
> shall, on release therefrom, be subjected to a
> period of parole during which their
> rehabilitation, adjustment and restoration to
> social and economic life and activities shall
> be aided and facilitated by guidance and
> supervision under a competent and efficient
> parole administration, and to that end it is
> the intent of this act to create a uniform and
> exclusive system for the administration of
> parole in this Commonwealth.

In December 1996 (the same month that Smedley was sentenced),

the Pennsylvania state legislature amended the law governing

parole.  Under the modified criteria, protection of the safety of

the public became the paramount condition which must be considered

in determining parole eligibility.  Specifically, the 1996

legislation decreed that "the Board shall first and foremost seek

to protect the safety of the public."  61 P.S. § 331.1 (Purdon's

1999).[3]  The former § 331.1 made no mention of pubic safety, and in

---

[3]   After amendment, section 331.1 reads in full:

> The parole system provides several benefits to
> the criminal justice system, including the
> provision of adequate supervision of the
> offender while protecting the public, the
> opportunity for the offender to become a useful
> member of society and the diversion of
> appropriate offenders from prison.

> In providing these benefits to the criminal
> justice system, the board shall first and
> foremost seek to protect the safety of the

(continued...)

4

fact declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.

During 2000, the Commonwealth of Pennsylvania enacted legislation known as the Violent Sex Offender Law (or VSOL) directing that certain sex offenders participate in a DOC program of counseling or therapy.   See 42 Pa. Cons. Stat. § 9718.1.[4]   A sex offender is not eligible for parole absent participation in the program.

In accordance with § 9718.1, the DOC implemented a Treatment Program for sex offenders which was in place at SCI-Mahanoy during the relevant time period of this matter.   It is also noted that the Parole Board is mandated by 61 P.S. § 331.19 to consider a parole applicant's participation in the DOC Treatment Program.

Throughout his incarceration, Smedley has refused to admit

---

[3](...continued)
> public.   In addition to this goal, the board
> shall address input by crime victims and assist
> in the *fair administration of justice* by
> ensuring the custody, control and treatment of
> paroled offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

[4]   "§ 9718.1 provides that individuals incarcerated in a state institution for enumerated sexual offenses involving minors will not be eligible for parole unless they have participated in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders."   Dodgson v. Department of Correcctions, 922 A.2d 1023, 1026 n. 3 (Pa. Cmwlth. 2007).

5

that he is guilty of any sex offense.  Plaintiff completed service
of his minimum sentence on December 10, 2001, at which time he
became eligible for parole.

A June 14, 2004, procedure adopted by the DOC with respect to
the VSOL provides that inmate participants who deny their guilt are
initially admitted into the Treatment Program.  However, such
prisoners are periodically re-evaluated and ultimately terminated
from the program if there is no evidence of satisfactory progress.
Smedley asserts that "[w]hile the regulations do not explicitly say
so" significant progress as defined by the DOC ultimately requires
either an admission of guilt or acceptance of responsibility by the
sex offender.  Doc. 8, ¶ 54.

Plaintiff was initially considered for parole on May 6, 2002.
At that time, Plaintiff was denied parole on the basis that the
"fair administration of justice cannot be achieved through your
release."  Id. at ¶ 28.

On August 10, 2004, Smedley was again considered for parole.
This time the Parole Board denied Plaintiff release based upon the
following reasons: (1) the nature and circumstances of Smedley's
offenses; (2) his refusal to accept responsibility for his
offenses; (3) the DOC's recommendation; (4) unacceptable compliance
with prescribed institutional programs; (5) institutional
misbehavior; (6) his need to participate and complete institutional
programs; and (7) his need to participate in a program for sex

6

offenders.  The Parole Board added that at Smedley's next parole
review it would consider whether he had completed a treatment
program for sex offenders.  See id. at ¶ 31.

Plaintiff appeared before the Parole Board for a third time in
May 2006.  By decision dated May 23, 2006, he was again denied
parole based upon (1) his minimization/denial of the nature and
circumstances of the committed offenses; (2) refusal to accept
responsibility for the offenses committed; (3) lack of remorse; (4)
negative recommendation by the DOC; (5) institutional misbehavior;
and (6) his interview with the Prole Board representative.  See id.
at ¶ 33.  The decision similarly added that when next being
considered for parole the Parole Board would consider whether
Smedley had successfully completed a sex offender treatment
program.

Plaintiff's fourth appearance before the Parole Board occurred
in June 2009.  In a decision dated June 10, 2009, the Parole Board
denied relief, stating that its decision was based upon: (1)
Plaintiff's unacceptable compliance with prescribed institutional
programs; (2) a risk and needs assessment indicating his level of
risk to the community; (3) the DOC's negative recommendation; (4)
failure to demonstrate motivation for success; and (5) his negative
interest in parole.  See id. at ¶ 36.  The decision added that
Smedley would be required to serve his unexpired maximum sentence
(until October 25, 2021) or be reviewed earlier upon DOC
recommendation.  If again considered, the Parole Board again
informed Plaintiff that one of the factors it would consider was

7

whether or not he had completed a sex offender program.

## Discussion

Defendants claim entitlement to entry of dismissal on the grounds: (1) Plaintiff's due process claim lacks merit because the alleged requiring of the Plaintiff to admit guilt was not arbitrary and did not shock the conscience; (2) the admission of guilt requirement has a rational relationship to a legitimate governmental purpose and thus satisfies equal protection; (3) there was no Ex Post Facto violation because the challenged policies and guidelines are not laws; (4) there is no basis for an Ex Post Facto claim because Smedley does not allege that he would have been granted parole absent the new guidelines; and (5) the Parole Board's June 10, 2009, determination did not violate the Ex Post Facto Clause. See Doc. 15, p. 7.

### Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a) (stating that the complaint should include "a short and plain statement of the

8

claim showing that the pleader is entitled to relief"); <u>Bell Atl.</u>
<u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  This requirement
"calls for enough facts to raise a reasonable expectation that
discovery will reveal evidence of" the necessary elements of the
plaintiff's cause of action.  <u>Id</u>. at 556.  A complaint must contain
"more than an unadorned, the-defendant-unlawfully-harmed-me
accusation."   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct 1937,
1949 (2009).  "Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements do not suffice."
<u>Iqbal</u>, 129 S. Ct at 1949.  Legal conclusions must be supported by
factual allegations and the complaint must state a plausible claim
for relief.  <u>See</u> <u>id</u>. at 1950.

"Factual allegations must be enough to raise a right to relief
above the speculative level, on the assumption that all the
allegations in the complaint are true (even if doubtful in fact)."
<u>Twombly</u>, at 555.  The reviewing court must determine whether the
complaint "contain[s] either direct or inferential allegations
respecting all the material elements necessary to sustain recovery
under some viable legal theory."  <u>Id</u>. at 562; <u>see also</u> <u>Phillips v.</u>
<u>County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (in order to
survive a motion to dismiss, a plaintiff must allege in his
complaint "enough facts to raise a reasonable expectation that
discovery will reveal evidence of the necessary element[s]" of a
particular cause of action).

**Due Process**

Count I of the Amended Complaint reiterates that the stated

purpose of the DOC's Treatment Program is to reduce recidivism. However, Plaintiff alleges that in light of recent statistical studies, which have been accepted by the DOC, there is no significant correlation between a sex offender's admission of guilt and his likelihood of recidivism. <u>See</u> Doc. 8, ¶ 80.

Accordingly, the Amended Complaint contends that the DOC Defendants' requirement of an eventual admission of guilt violates due process under the Fourteenth Amendment as it:  exceeds the power granted to them under the VSOL; is arbitrary and capricious; and is not rationally related to a legitimate governmental purpose. <u>See</u> <u>id</u>., ¶¶ 78-88.

Count IV sets forth a related due process claim against the Parole Board Defendants on the basis that refusal to grant parole to Plaintiff based upon his failure to gain admission to the Treatment Program is arbitrary and capricious and not rationally related to the purpose of rehabilitation.  <u>See</u> <u>id</u>., ¶¶ 110-114.

Defendants accurately describe Counts I and IV as similarly contending that "because there is no provable statistically significant correlation between a sex offender's admission of guilt and his subsequent rehabilitation, the alleged admission of guilt requirement violates due process." Doc. 15, p. 7.  They maintain that a due process claim is not sufficiently set forth in Counts I and IV  because under <u>Newman v. Beard</u>, 617 F.3d 775, 782 (3d Cir. 2010), the alleged requirement that Plaintiff admit guilt was not arbitrary and did not shock the conscience. <u>See</u> <u>id</u>., p. 8.  The supporting brief adds that the United States Supreme Court in

McKune v. Lile, 536 U.S. 24, 33 (2002), recognized that requiring a sex offender to admit his or her guilt during the course of a treatment program removes a principal impediment to successful therapy.

Plaintiff's opposing brief counters that he has a substantive due process right to apply for parole and have his application fairly considered.  See Doc. 18, p. 7.  Smedley adds that his due process claim should be reviewed under the criteria developed by the Supreme Court in Turner v. Safley, 482 U.S. 78 (1987).[5] Smedley adds that under Turner, even if it was decided that the regulation at issue was rationally related to a valid penological interest, evaluation of the three additional Turner factors is required.  Moreover, he argues that the McKune decision is no longer relevant due to the presence of more modern scientific opinion in the field as to the effectiveness of requiring an admission of guilt.

A reply brief by Defendants asserts that the Turner test is not applicable in this case because an inmate has no protected

---

[5] In Turner, the United States Supreme Court concluded that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest." Id. at 84-85, 89.  Turner, set forth four factors to consider in reaching a decision: (1) is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" (citation omitted), id. at 89; (2) does the prisoner have alternate means of "exercising the right that remain open to prison inmates," id. at 90; (3) what "impact" would "accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally," id.; and (4) what "ready alternatives" to the prison regulation exist, id.

liberty interest in parole and this is not a case where a prison regulation impinges on a prisoner's constitutional rights as was the situation considered in <u>Turner</u>. <u>See</u> Doc. 24, p. 3.

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979). Likewise, the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. <u>Rodgers v. Parole Agent SCI-Frackville, Wech</u>, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); <u>McCrery v. Mark</u>, 823 F. Supp. 288, 294 (E.D. Pa. 1993); <u>Thorpe v. Grillo</u>, 80 Fed. Appx. 215, 2003 WL 22477890 (3d Cir. 2003) (because there is no constitutional right to parole, any substantive due process claim is foreclosed); <u>Perry v. Vaughn</u>, No. Civ. A. 04-CV-0934, 2005 WL 736633, at *10 (E.D. Pa. Mar. 31, 2005); <u>Charles v. Witman</u>, Civil No. 3:CV-94-1713, slip op. at 3. (M.D. Pa. July 20, 1995) (Pennsylvania's parole regulations do not confer a predictable expectation of parole upon completion of a rehabilitation program).

However, the United States Court of Appeals for the Third Circuit has also held that:

> [E]ven if a state statute does not give rise to a liberty interest in parole release under <u>Greenholtz</u>, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.

<u>Block v. Potter</u>, 631 F.2d 233, 236 (3d Cir. 1980). Accordingly, even where a state statute grants discretion to the state parole

board to condition or completely deny parole, it may not permit
"totally arbitrary parole decisions founded on impermissible
criteria."   Id.

Consequently, a federal court may review a decision by a state
parole board for an abuse of discretion.   Id.   Upon such review,
relief will only be available if an applicant can show that parole
was arbitrarily denied based on some impermissible reason such as
"race, religion, or political beliefs," or that the parole board
made its determination based on "frivolous criteria with no
rational relationship to the purpose of parole. . . ."   Id. at 236
n.2.

Based upon the above discussion, this is not a case where
there is a claim that a prison regulation has impinged upon an
inmate's constitutional rights, hence, Plaintiff's argument that
the Turner test is applicable in this case will not be accepted.
Rather, the appropriate criteria is whether the Defendants' conduct
was arbitrary and shocked the conscience.   See Goodman v. McVey,
428 Fed. Appx. 125, 2011 WL 1958069 (3d Cir. May 23, 2011)
(recognizing that the shocks the conscience criteria should be
employed in reviewing parole related claims); Newman, 617 F.3d at
782.

Second, based upon the conclusions of the United States
Supreme Court in McKune and the Third Circuit Court of Appeals in
Newman which recognized that a sex offender's acceptance of
responsibility for past offenses was a critical first step in a
prison's rehabilitative program for such offenders, this Court is

13

satisfied that the DOC's Treatment Program and the Parole Board's reliance on said program, including any requirement that the offender ultimately accept responsibility for his past sexual offenses, did not violate Smedley's due process rights.  See McKune, 536 U.S. at 33; Newman, 617 F.3d at 781-82.

Moreover, the Parole Board cited numerous other factors such as institutional misbehavior, lack of remorse, and failure to demonstrate motivation for success as being reasons for its decisions to deny parole. Thus, the decision to deny parole was not solely based upon Petitioner's failure to successfully complete a sex offender program, but rather, such failure was considered with other appropriate factors in the ultimate decision whether to grant or deny parole.  The additional factors cited by the Parole Board bolster this Court's conclusion that this is not a case where parole was arbitrarily denied for impermissible or frivolous reasons.

**Equal Protection**

Count II asserts that no other treatment plan created and conducted for violent offenders by the DOC Defendants requires "as a precondition of admission to such program an admission of guilt of the crimes of which they were convicted."  Doc. 8, ¶ 92. Plaintiff concludes that the DOC Defendants lack a rational purpose for requiring inmates to admit guilt to sex offenses as a requirement for admission into the Treatment Program and as a prerequisite to receiving a positive parole recommendation.  As a result, the policy is discriminatory in violation of the Equal

Protection Clause of the Fourteenth Amendment.

Count V of the Amended Complaint alleges that the Parole Board Defendants likewise violated Smedley's equal protection rights because he was treated differently from other violent offenders in that he was required to complete a Treatment Program requiring an admission of guilt as a prerequisite to obtaining a grant of parole.  See id. at ¶ 116.

Defendants assert that a denial of equal protection claim has not been set forth in the Amended Complaint because there is a rational basis to a legitimate governmental purpose for Pennsylvania's different treatment of sex offenders.  See Doc. 15, p. 10.  Specifically, they contend that as recognized by the Supreme Court in McKune a treatment program can enable sex offenders to manage their impulses and reduce recidivism. Furthermore, an "important component" of such programs requires an offender to confront and accept responsibility for their past misconduct.  Id. at p. 11.  Moreover, they note that under Heller v. Doe, 509 U.S. 312, 320 (1993), regardless of any contrary empirical data the law must be upheld as long as there is a credible reason for the legislative action.

Plaintiff acknowledges that since he does not make a claim that he is a member of a suspect class or that a fundamental right has been violated the challenged regulation is constitutionally acceptable provided that it has a rational relationship to a legitimate state interest.  See Doc. 18, p. 12.  However, Smedley argues that there is no rational basis why violent sexual offenders

are treated differently than prisoners convicted of non-sexual violent crimes of the same magnitude.  He adds that based upon statistical evidence accepted by the DOC, sexual offenders have a lower rate of recidivism than any other category of offender and there is no statistically significant relationship between admission of guilt and lower sex offender recidivism.  The opposing brief adds that contrary to Defendants' argument statistics cannot be dismissed as a basis for challenging the rationality of a regulation especially when such information is relied upon by the DOC and parole Board when making parole decisions.  Plaintiff also offers that McKune is no longer persuasive because it relies upon statistical evidence available in 1988.  See id. at p. 14.

A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination.[6] Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986).  However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways."  Reed v. Reed, 404 U.S. 71, 75 (1971).  The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'"  Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v.

---

[6] The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deny any person within its jurisdiction the equal protection of the laws."

Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

In analyzing an equal protection claim, a court must consider what interest or type of classification is involved.  Smedley's present claim does not involve a classification based on race, religion or national origin.  It is also well settled the Equal Protection Clause does not afford heightened scrutiny of a state's treatment of sex offenders.  See Dantzler v. Tennis, Civ. A. No. 08-1612, 2008 WL 4274486, at *2 (E.D. Pa. Sept. 17, 2008). Accordingly, this Court agrees that Plaintiff's equal protection claim does not call for heightened scrutiny.  "Because the distinctions at issue here do not implicate a suspect or quasi-suspect class, the state action here is presumed to be valid and will be upheld if it is 'rationally related to a legitimate state interest.'"  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 423 (3d Cir. 2000).

It is equally clear that as discussed in McKune and Newman the different treatment afforded to Pennsylvania state sex offenders by the DOC and Parole Board is the result of special public safety and rehabilitative requirements being placed on those inmates due to the nature of their crimes, treatment which is rationally related to legitimate penological objectives of public safety and rehabilitation.  Contrary to Plaintiff's assertion that McKune is

outdated, said decision was handed down in 2002 not 1988 as implied by Plaintiff.   Moreover, the Third Circuit Court of Appeals' 2010 decision in <u>Newman</u> likewise concluded that "the Parole Board had legitimate penological reasons" for requiring admission of guilt in the treatment Program.   <u>Newman</u> 617 F.3d at 782.   Furthermore in <u>United States v. Lopez</u>, 650 F.3d 952, 960 (3d Cir. 2011) the Court of appeals stated under the rational basis review the party challenging the classification bears the burden of negating every conceivable basis which might support it.   Thus, merely pointing out that subsequent studies have reached a different conclusion is not in and of itself a sufficient basis to establish an equal protection claim.

Since this Court is bound by the determinations reached by the Court of Appeals in <u>Newman</u>, a decision handed down well after the 2003 and 2004 statistical studies relied upon by Smedley, it simply cannot be concluded that a viable equal protection claim has been stated.

**Ex Post Facto**

In Count III Plaintiff contends that the DOC Defendants violated the <u>Ex Post Facto</u> Clause by requiring him to complete a treatment program and make an admission of guilt--requirements which did not exist at the time he was convicted of his crimes.[7] <u>See</u> Doc. 8, ¶ 100.   Smedley adds that if not for the VSOL he would have been eligible for parole consideration at all times and would

---

[7]   Per Plaintiff's request, a second Count III which appears on pages 32 and 33 of the Amended Complaint is deemed stricken.

have been substantially more likely to have qualified for parole.

Count VI contends that the Parole Board Defendants committed an Ex Post Facto violation by considering his eligibility for parole based upon requirements, including completion of a sex offender treatment program, which were not in effect at the time of Plaintiff's arrest and conviction. See id. at ¶¶ 119-129. It is also asserted that the Parole Board erred by requiring Plaintiff to receive a favorable DOC recommendation in order to apply for parole or to be paroled, a requirement which did not exist at the time of Smedley's conviction.

Defendants argue that Plaintiff does not claim that § 9718.1 is violative of the Ex Post Facto Clause, rather he seeks relief regarding an unstated policy which purportedly requires a sex offender to  admit to his crimes in order to complete a treatment program.  The Defendant contends that the alleged policy is not a law subject to the Ex Post Facto Clause.  See Doc. 15, p. 14.

Plaintiff states that based on application of the principles announced in Mickens-Thomas v. Vaughn, 321 F. 3d 374 (3d Cir. 2003), a viable claim has been stated in that the standard for parole eligibility is more onerous that those which would have applied to him at the time of his conviction.[8]  See Doc. 18, p. 18.

---

[8]  Mickens-Thomas observed that the Ex Post Facto Clause applies to a statutory or policy change that "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Id. at p. 383 (quoting California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995)).  "One function of the Ex Post Facto Clause is to bar enactments, which by retroactive operation, increase the punishment for a crime after its commission."  Garner v. Jones, 529 U.S. 244, 249 (2000).

A new law or policy violates the Ex Post Facto Clause when it is applied to events which occurred prior to its enactment and disadvantages the offender affected by it.  Weaver v. Graham, 450 U.S. 24, 29 (1981).  "One function of the Ex Post Facto Clause is to bar enactments, which by retroactive operation increase the punishment for a crime after its commission."  Garner v. Jones, 529 U.S. 244, 249 (2000); Puifory v. Reilly, No. 3:08-CV-982, 2009 WL 839354, at *5 (M.D. Pa. Mar. 30, 2009) (retroactive application of a parole regulation which creates a significant risk of increasing the prisoner's incarceration may violate the ex post facto prohibition); Bonilla v. Vaughn, No. Civ. A. 97-7440, 1998 WL 480833, at *7 (E.D. Pa. Aug. 14, 1998) (retroactive application of a change in parole laws if applied rigidly or mechanically can constitute an ex post facto violation).

However, an ex post facto violation is not established by merely showing that the Parole Board employed the amended statute. Taylor v. Pennsylvania Bd. Of Probation and Parole, 181 Fed. Appx. 253, 254 (3d Cir. 2006).  Rather, a petitioner must show that the parole policy change was given retrospective effect and that its retrospective application created a real risk of increasing the measure of the prisoner's punishment.  See Tyler v. Gillis, Civ. A. No. 1:04-CV-2345, 2006 WL 2038398, at *1  (M.D. Pa. July 19, 2006); Shaffer v. Meyers, 163 Fed. Appx. 111, 113-14 (3d Cir. 2006); Richardson v. Pa. Parole Board, 423 F.3d 282, 288 (3d Cir. 2005).

It is undisputed that the DOC implemented new regulations which permit a sex offender such as Smedley "who does not

explicitly admit his guilt" to be accepted into the Treatment
Program.   Doc. 8, ¶ 52.   The DOC regulations also require that such
an individual is to be re-evaluated at various intervals and
ultimately terminated if "satisfactory progress is not evidenced."
Id. at ¶ 53.

The Amended Complaint adds that "[w]ile the regulations do not
explicitly say so" program personnel have construed satisfactory
progress to include an admission of guilt.   Id. at ¶ 54.   Since the
basis for Plaintiff's ex post facto claim is not a written law,
policy or regulations but rather is based upon their perception as
to an unwritten interpretation undertaken by Treatment Program
personnelm, this Court agrees with Defendants' contention that a
viable violation of the Ex Post facto clause has not been stated.

Moreover, the decision to deny parole to Plaintiff was not
solely based upon his failure to successfully complete a sex
offender program, but rather, such failure was considered with
other appropriate factors in the ultimate decision whether to grant
or deny parole.   Thus, the denial of parole was based upon multiple
legitimate factors that would have resulted in the denial of parole
under the 1996 policies. This Court is also not satisfied that
Smedley has adequately alleged that he was personally disadvantaged
by the alleged parole policy change which was given retroactive
effect.

## Conclusion

The motion to dismiss will be granted based upon this Court's
determinations that: (1) there is no constitutional right to

parole; (2) due process was satisfied in that the actions of the DOC and Parole Board were neither arbitrary nor based upon frivolous criteria; (3) Smedley was not treated differently from similarly situated parole applicants; and (4) there was no violation of the Ex Post Facto Clause based upon an unstated policy and the denial of parole was based upon legitimate factors that would have resulted in the denial of parole under the 1996 policies.  An appropriate Order will be entered.

RICHARD P. CONABOY
United States District Judge

DATED:    MARCH 30, 2012

**FILED**
**SCRANTON**

MAR 3 0 2012

PER ___KM___
DEPUTY CLERK

22